# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| BOBBY ALAN DEVARY, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C13-3035-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Bobby Alan Devary seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Devary contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period of time. For the reasons that follow, the Commissioner's decision will be affirmed.

## I.    BACKGROUND

Devary was born in 1970 and previously worked as a construction worker and combination welder. AR 272. He protectively filed for DIB on April 11, 2011, alleging a disability onset date of November 10, 2010. AR 14. Devary alleged disability due to various physical impairments, including degenerative joint disease in both knees, carpal tunnel syndrome and degenerative disc disease of the lumbar spine. AR 16. His claim was denied initially and on reconsideration. AR 14. He then requested a hearing before

an Administrative Law Judge (ALJ) and on September 25, 2012, ALJ Hallie E. Larsen held a hearing during which Devary and a vocational expert (VE) testified. AR 30-57.

On October 26, 2012, the ALJ issued a decision finding Devary was not disabled from November 10, 2010, through the date of her decision. AR 14-23. Devary sought review of this decision by the Appeals Council, which denied review on June 12, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

On July 23, 2013, Devary filed a complaint (Doc. No. 4) in this court seeking review of the Commissioner's decision. On August 20, 2013, with the parties' consent (Doc. No. 7), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the

claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that

the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

(2) The claimant has not engaged in substantial gainful activity since November 10, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: degenerative joint disease bilateral knees, status post multiple knee surgeries, bilaterally; carpal tunnel syndrome, status post release bilaterally; degenerative disc disease lumbar spine, status post surgery (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. He can sit for 6 hours in an 8-hour day and stand and/or walk for 2 hours in an 8-hour day with normal breaks. He can never climb ladders/ropes/scaffolds, kneel, or crawl. He can occasionally climb stairs/ramps, stoop, and crouch. He can never balance on uneven surfaces but may frequently balance on level surfaces. The claimant can frequently but not constantly handle,

> bilaterally. He must avoid concentrated exposure to work around hazards such as dangerous machinery and unprotected heights.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on September 10, 1970 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> (8) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from November 10, 2010, through the date of this decision (20 CFR 404.1520(g)).

AR 16-23.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial

evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817,

822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Devary argues the ALJ's decision is not supported by substantial evidence for the following reasons:

    I.    The ALJ erred in finding that Devary has the RFC to perform some amount of sedentary work.

    II.    The ALJ erred in relying on Devary's daily activities to discredit his allegations of disabling impairments.

I will discuss these arguments separately below and will then consider whether the evidence supports the ALJ's finding, at Step Five, that Devary is capable of performing other work available in significant numbers in the national economy.

### A. *Devary's Ability To Perform Sedentary Work*

Devary argues that the ALJ erred in formulating his RFC and making the resulting Step Five determination that there are sedentary jobs he can perform. He focuses exclusively on the issue of whether he has the ability to handle frequently. He points out that when his attorney asked the VE a hypothetical question that included an ability to handle only occasionally, the VE testified that there would be no work available. AR 54-55. Devary contends that his attorney's hypothetical question accurately reflects his ability to handle and, therefore, the ALJ erred in finding that he has the ability to perform certain sedentary work.

As noted above, the ALJ found that Devary "can frequently but not constantly handle, bilaterally." AR 17. A claimant's RFC is a medical question and the ALJ's

8

assessment must be supported by "some medical evidence" of the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). "It is the ALJ's responsibility to determine [the] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Page*, 484 F.3d at 1043). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

On the issue of Devary's ability to handle, the ALJ referenced medical records concerning treatment of bilateral carpal tunnel syndrome (CTS). AR 19. She noted he underwent surgery on both arms in November 2011 and that prior to surgery, he had demonstrative positive Tinel's signs, indicating possible nerve compression. *Id.* (citing AR 278). She also noted that no records after surgery suggest any continuing, persistent symptoms of CTS. AR 19. Indeed, she observed that the record contains no evidence that Devary sought further treatment of any kind for any CTS-related symptoms after both arms were treated surgically. *Id.* The ALJ also discussed the medical opinion evidence of record. AR 20-21. While the record contains no treating source opinions, it does include the opinion of a consultative examiner (Dr. Hilsabeck) and two nonexamining state agency consultants. AR 281-93, 303-10.

Dr. Hilsabeck examined Devary in July 2011 – approximately four months before his CTS surgeries. AR 281. While mentioning Devary's then-existing CTS symptoms, he made no specific findings of any functional limitations resulting from the impairment. AR 281-82. Indeed, he devoted most of his written remarks to Devary's back and knee impairments. *Id.* Dr. Hilsabeck did conclude, in general terms, that Devary "does appear significantly disabled from his current orthopedic problems." AR 282. The ALJ

considered Dr. Hilsabeck's opinion but gave it little weight, finding it to be "vague" and noting that it "failed to provide specific functional limitations." AR 21.

The nonexamining consultants prepared written RFC assessments, based on their reviews of records, in August and October of 2011. AR 293, 310. Both consultants found that Devary could handle frequently, but not constantly, with his left hand and arm. AR 289, 306. Both also found that Devary had no limitations on handling with his right hand and arm. *Id.* The consultants concluded that Devary was able to perform work at the light exertional level. AR 21. The ALJ gave both opinions little weight, noting that Devary had undergone additional surgeries and finding, in light of his subjective complaints, that he is limited to sedentary work. *Id.*

In complaining about the ALJ's finding, Devary does not appear to argue that the two CTS surgeries in November 2011 were ineffective. He points to no medical evidence in the record contradicting the ALJ's statement that he did not seek post-surgical treatment for any CTS symptoms. Instead, he simply requests that the court "make a searching review of the record" and expresses a belief that this "searching review" will show that he did not have the ability, *prior to* surgery, to frequently handle. Doc. No. 16 at 8. While he makes no effort to explain the argument further, the implicit suggestion is that Devary could not frequently handle for some period of time prior to his first surgery. Thus, apparently, the ALJ erred in finding otherwise.

Construing Devary's barely-developed argument as generously as I can, it appears he is advocating for a "closed period" of benefits, starting on some date prior to his first surgery and ending after either the first or second surgery. The Commissioner may award Social Security disability benefits either on a continuing basis, or for a "closed period." *See Harris v. Sec'y of Dept. of Health and Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992) (noting that disability is not an "all-or-nothing" proposition and disability benefits may be awarded on either a continuing basis or "closed period" under 20 C.F.R. § 404.316). However, even within a closed period, a claimant must still meet the definition of disability which is an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Devary's CTS-related impairment cannot be considered disabling for a "closed period" because it was amenable to treatment through surgery. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). The medical evidence demonstrates that (a) Devary suffered some symptoms of CTS prior to surgery, (b) had surgery on both arms and (c) never sought additional treatment after those surgeries. Moreover, the medical evidence demonstrates that Devary's CTS was being treated conservatively even before surgery, with no indication that it was a disabling impairment. *See, e.g.,* AR 294, 298.

I will address Devary's arguments concerning the ALJ's evaluation of his subjective allegations in Section V(B), *infra*. With regard to the medical evidence, however, I conclude that substantial evidence supports the ALJ's finding that Devary is able to perform sedentary work. Neither the contemporaneous treatment records nor the medical opinion evidence of record contradicts this finding.

### B.    *The ALJ's Credibility Assessment*

Devary alleges the ALJ erred in relying on his daily activities as a basis for discrediting his subjective allegations. He faults the ALJ for not asking more questions about those activities during the hearing and refers the court to an explanation his attorney provided to the Appeals Council. Devary contends that if the ALJ had fully explored the circumstances of his daily activities, the ALJ would have been unable to find that he can perform sedentary work.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage

and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ is not required to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ cited *Polaski* and listed the applicable factors before summarizing Devary's subjective allegations of disabling impairments. AR 17-18. Those allegations included knee pain at a level of 8 (on a 10 scale), back pain and pain and numbness in his upper extremities. AR 18. The ALJ then stated her finding that these allegations are credible only to the extent that they are consistent with her determination of Devary's RFC. *Id*. The ALJ cited several reasons for this credibility finding, including: (1) the objective medical evidence does not support that Devary is limited to the degree he alleges, (2) Devary's treatment history regarding his knee pain, back pain and CTS does not suggest the level of severity he claims, (3) Devary's daily activities do not suggest limitations as great as he alleges, (4) Devary's work history shows that he was able to perform heavy work in the past while suffering from similar symptoms and (5) the medical opinion evidence does not support Devary's allegations. AR 18-21.

I have already found that the objective medical evidence and the medical opinions in the record support the ALJ's RFC determination. With regard to Devary's daily activities, the ALJ stated:

> The claimant's activities of daily living have also been considered. The claimant testified at the hearing that he lives with his wife in a house. He

stated that he can care for his personal needs and drive with breaks. He reported he does laundry and will load the dishwasher, but he stated he does not do much of anything else. At the outset, the undersigned notes that these activities reflect ability to rely on his upper extremities sufficiently to pick up and put in place breakable dishes and glasses or to manipulate the steering wheel, knobs, and other controls of an automobile. In addition, doing laundry and loading the dishwasher necessarily involves bending and lifting at a greater - albeit rather limited - capacity than he alleged. However, despite these specific examples, these daily activities reported are quite limited and generally consistent with the claimant's allegations.

However, the record as a whole supports that the claimant's activities of daily living are far more broad. Function reports reflect that the claimant cares for pets, prepares meals with his wife, mows the lawn with a riding mower, shops, goes out for drinks or dinner with friends, fishes once weekly, and goes camping from time to time (Exhibits 4E and l0E). These demonstrate that the claimant can lift and carry bowls of water or pet food, fishing gear, or groceries. He can walk about a store or on uneven terrain, such as in his yard or near a body of water. The claimant is able to sit in a car or on a riding lawnmower, tolerating vibrations and using his hands to control the vehicles. He can hold cooking utensils or a fishing pole and tackle. Certainly, these activities of daily living remain limited, and they are not suggestive of an ability to do "heavy" work, but they are consistent with the range of sedentary work set forth above.

The undersigned has considered whether the claimant's activities of daily living were reported as more limited at the hearing because he is still recovering from his knee surgery. Although this is likely the case, the undersigned is concerned with evidence in the record generated one week prior to the hearing, during which the claimant sought emergency treatment for a corneal abrasion sustained when he was grinding metal with a bench grinder (Exhibit 23F, pp. 3-6). Doing this activity requires firmly holding an object while sustaining vibrations into the hands and upper extremities, which is inconsistent with his allegation that he has very limited use of his hands. But moreover, this activity - which is a quite significant activity one does not engage in through happenstance or in the course of normal, typical household activity - is wholly inconsistent with the extremely limited activities of daily living he reported at the hearing. The fact that one week prior to the hearing, the claimant was doing metalwork raises questions about his credibility, generally. The undersigned acknowledges that this is one incident, and no broad conclusions can reasonable [sic] be drawn from

13

it; however, it is some evidence, however slight, that the claimant is not as
limited as he alleged.

AR 20-21. In objecting to this analysis, Devary cites cases holding that a claimant's ability to engage in some personal activities (cooking, cleaning, etc.) does not constitute substantial evidence that the claimant has the RFC to perform substantial gainful activity. *See, e.g., Singh,* 222 F.3d at 453. As noted above, however, the ALJ did not rely solely on Devary's daily activities to determine his RFC and find that he can engage in sedentary work. Instead, she provided numerous reasons for both her credibility assessment and her ultimate RFC finding. The ALJ's explanation as to how Devary's daily activities cast some doubt on his credibility is supported by substantial evidence in the record. Indeed, upon review of the record as a whole, I find that all of the ALJ's reasons for discrediting Devary's subjective allegations are good reasons, supported by substantial evidence.

Devary also refers me to new evidence in the form of the explanation he provided to the Appeals Council concerning various daily activities. AR 273-75. That explanation was in the form of a brief submitted by Devary's attorney. *Id.* The Appeals Council made the brief part of the record, as Exhibit 24E, and considered it for purposes of reviewing the ALJ's decision. AR 5. The regulations describe the review process for new and material evidence as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). If the Appeals Council considers the new evidence, but declines to review the case, the court reviews the ALJ's decision to determine whether there is substantial evidence in the administrative record, which now includes the new evidence,

to support the ALJ's decision. *Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992).

Having carefully reviewed the explanation submitted as new evidence, I find that substantial evidence in the record, as modified, supports the ALJ's credibility determination. Nothing about the explanation, even if accepted as entirely accurate, renders unsupportable the ALJ's finding that Devary's daily activities are inconsistent with his allegation of disabling limitations. And, again, daily activities were one just one of several reasons, supported by substantial evidence in the record as a whole, that the ALJ provided in assessing Devary's credibility.[1] In short, I reject Devary's argument that the ALJ's analysis of Devary's daily activities was erroneous.

C.   *The Step Five Determination*

In addition to analyzing the issues expressly raised in Devary's brief, I have also conducted a thorough review of the entire record. Based on that review, I find that the ALJ's formulation of Devary's RFC is supported by substantial evidence in the record as a whole. This leaves, as the only remaining question, whether the record supports the ALJ's finding at Step Five that Devary can perform other jobs available in significant numbers in the national economy. It does.

The ALJ posed a question that asked the VE to assume various limitations about a hypothetical individual, including a lifting restriction and a restriction that the individual was "limited to frequent, not constant, handling bilaterally." AR 51. Despite these limitations, and others, the VE testified that the individual could perform various light,

---

[1] I also reject Devary's argument that the ALJ failed to fully and fairly develop the record by not asking Devary more questions about his daily activities during the hearing. The ALJ asked numerous questions about Devary's activities. AR 41-43. And, of course, a claimant's daily activities constitute one of the long-established factors for assessing his or her credibility. *See Polaski*, 739 F.2d at 1322. If Devary's counsel felt that additional testimony concerning Devary's daily activities was important, he could have adduced that testimony when he had the opportunity to pose questions during the hearing. AR 43-50.

unskilled jobs that are available in significant numbers in the national economy. AR 52-53. When the ALJ amended the hypothetical question to make the lifting limitation more restrictive, the VE testified that the individual would nonetheless be able to perform various unskilled, sedentary jobs that are available in significant numbers in the national economy, including taper, sorter and weight tester. AR 53-54. The lifting restriction in the amended hypothetical question corresponds to the restriction the ALJ included in Devary's RFC. AR 17, 53.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)). "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when [t]here is no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities or when the record does not support the claimant's contention that his impairments significantly restricted his ability to perform gainful employment." *Buckner*, 646 F.3d at 561 (quoting *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (internal quotations omitted)). Here, I have found that the ALJ's determination of Devary's RFC is supported by substantial evidence in the record as a whole. I further find that the VE's testimony, based on the limitations contained in that RFC, constitutes substantial evidence supporting the ALJ's finding at Step Five that Devary can perform other work. As such, Devary was not disabled within the meaning of the Act during the relevant period of time.

## *CONCLUSION*

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that plaintiff Bobby Alan Devary was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **affirmed**. Judgment shall be entered in favor of the Commissioner and against Devary.

**IT IS SO ORDERED.**

**DATED** this 19th day of March, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE